77  567
180s 357

# Baltimore & O. S. W. Ry. Co. v. Minnie Slanker.

1. RAILROADS—*Must Stop Trains a Sufficient Time to Allow Passengers to Alight.*—It is the duty of a railroad company to stop its trains at a depot a sufficient length of time to enable the passengers who desire to alight to do so in safety.

2. VERDICTS—*On Conflicting Evidence.*—A verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize the verdict, notwithstanding it may appear to be against the weight of the testimony.

3. EVIDENCE—*Extent and Duration of Bruises.*—Where the declaration charges, among many other injuries, that the plaintiff was bruised upon her body, the extent and duration of any injury resulting from a bruise upon any part of the body, received as part of the injury complained of, may properly be proven.

**Trespass on the Case,** for personal injuries. Trial in the City Court of East St. Louis: the Hon. BENJAMIN H. CANBY, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed August 31, 1898.

POLLARD & WERNER, attorneys for appellant.

JESSE M. FREELS and A. R. TAYLOR, attorneys for appellee.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

This was a suit by appellee against appellant in the City Court of East St. Louis, to recover damages for personal injury.

The declaration states that appellee on the 10th day of May, 1896, became a passenger on appellant's train at Olney, Illinois; that appellant undertook to carry her safely to the relay depot in East St. Louis, Illinois, and there allow her time and opportunity to alight in safety; and she charges, in substance, that upon reaching her destination, the cars were stopped for passengers to get off, but that before she

had reasonable time and opportunity safely to do so, the cars were started forward with a sudden jerk, which threw her from the car to the ground, and greatly and permanently injured her; that her ankle and foot were crushed and the bones broken, her head lacerated, and that she was bruised upon her body. To the declaration appellant pleaded not guilty. Trial by jury. Verdict in favor of appellee for $6,750. Appellee remitted $1,750, and the court rendered judgment on the verdict for $5,000.

To reverse this judgment appellant urges: That there is no substantial evidence tending to prove the negligence charged in the declaration; that the verdict is against the weight of the evidence; that the court admitted improper evidence, and that the court erred in giving the first and second instructions asked by appellee.

Counsel for appellant contend that the law is:

" Where there is no substantial evidence tending to prove a material issue of fact essential to be proved that plaintiff may recover, the court should direct a verdict for the defendant."

This is a very correct statement of the law as we understand it.

The negligence charged, and which, in order that appellee may recover, there must be some substantial evidence tending to prove, is:

That appellant did not allow to appellee sufficient time and opportunity to safely alight from the car at her journey's end; and that after stopping to let her get off and before she had reasonable time to safely do so, the cars were started forward with a sudden jerk, throwing her off.

The train consisted of eight or ten cars, and had from 470 to 480 passengers aboard. It was an excursion train.

Appellee testified: " When the conductor took up my ticket I told him I was going to get off at East St. Louis, and asked how many stops before the relay, and whether time would be given passengers to alight there. He said the train would make three stops; first, to register; second, to change engines; and third, at the relay, and ample time

given for passengers to alight, and asked me if I was going to East St. Louis. I said yes, and he said, 'I will take your bridge ticket,' and he did.

On reaching East St. Louis the first stop was at Cone's to register, then about half way between that station and the relay, to change engines. Then the train slowed up for the relay station. I saw the passengers were getting up to make ready to leave the car. I got up and stood between the seats as the train stopped. * * * When the car came to a stop I went out from the car. There were passengers ahead of me, getting out. I followed within reasonable distance, two or three feet. * * * I got out the forward end of the car. The train was standing still until I was on the platform of the car; * * * then the train started and I was thrown off the car. I was thrown against the end of the car and from there off. The car started suddenly; the effect was to throw me off. It all happened so quick, I don't know that I can state exactly, but there was sufficient shock to jar my left shoulder, when I struck the end of the car."

R. G. Morris testified : " I reside in Olney; was passenger in same car as plaintiff. I sat * * * right opposite her seat; * * * when the train came to the relay depot and slowed up I saw Mrs. Slanker get up and stand in the aisle. I think the train had not got to a stop when she got up. The car was full of passengers, some standing in the aisles; * * * plaintiff followed the people who preceded her out of the door; she was right behind them."

A. A. Shannon testified : "Live at Mt. Erie. Saw Mrs. Slanker in car on the day in question talking to Dr. Morris. * * * Saw her afterward when she fell from the train. There was quite a crowd in the car and they all got up and commenced going out; she was the last on the front end of the car, going out. The car was standing still when Mrs. Slanker passed out from her seat to the front end to the platform. She was probably two or three feet behind the next preceding passenger; about as (close as) convenient for her to be." He also testified that he was sitting right by a raised window when she passed out, and just turned

his head and looked out of the window and saw her fall
head-foremost; that just about that time the car had moved
up, not very fast, kind of easy kind of a jerk.

The testimony is conflicting as to the length of time, by
the clock, the train did stop at the station. The conductor
says, "We made an ordinary passenger stop."

In our judgment there is, in this record, substantial evi-
dence tending to prove the negligence charged. It was the
duty of appellant to stop its train at the relay depot a
sufficient length of time to enable all the passengers, who
desired to do so, to alight in safety. Appellee was espe-
cially assured by the conductor that ample time would be
given at the relay depot for passengers to alight. The
testimony shows that as soon as the train began to slow up
for the station, appellee got up and stood between the seats,
ready to start out when the train should stop; that she fol-
lowed along behind those in front of her as closely as she
conveniently could, and passed out of the car door while
the train was yet still, and that immediately on reaching
the platform of the car, and before she could step down
from it, the train started up with such force as to throw
her off.

That a passenger exercising the diligence the evidence
shows appellee was exercising, was unable to alight between
the stopping and starting of the train, raises the presump-
tion that the train did not stop a sufficient length of time.
The conductor's testimony corroborates appellee on this
branch of her case. He says he made the ordinary passenger
stop. This was not an ordinary passenger train. It was an
excursion train, composed of eight or ten passenger coaches;
carrying 470 to 480 passengers, and it appears from the
evidence that many of those at least who were in the car
with appellee wanted to get off the train at the relay
depot. An ordinary passenger stop might not, and if this
was in fact such stop, the evidence shows that it did not,
meet the reasonable requirements of this extraordinary
occasion.

It is urged that the verdict is against the weight of the
evidence.

There is in this record "substantial evidence tending to prove every material issue of fact essential to be proved that plaintiff may recover." Where there is a conflict of evidence, it is the province of the jury to determine and say where the truth is. In I. C. R. R. Co. v. Gillis, 68 Ill. 319, our Supreme Court has said :

" If any rule of this court can be so well established as to be neither questioned nor require the citation of authorities to support it, it is that a verdict will not be set aside whenever there is a contrariety of evidence, and the facts and circumstances by a fair and reasonable intendment will authorize the verdict, notwithstanding it may appear to be against the strength and weight of the testimony."

The court admitted evidence concerning the development of a tumor on the breast of appellee after the injury. Appellant contends this was error because special damage is not alleged in the declaration.

The declaration charges, among many other injuries, that appellee was " bruised upon her body." Under that averment we are of opinion the extent and duration of any injury resulting from a bruise upon any part of her body, received as part of the injury complained of, may properly be proven. The testimony of the physicians tends strongly to prove that the tumor resulted from a bruise, and appellee testifies that she received, at the time of the injury complained of and as part of the injury, a bruise on that part of her body, and that she had never at any other time in her life received a bruise on that part. But if this is not proper, under the declaration as it is, it in no way affects appellee's right to recover; it goes only to the extent of the damages; and appellant nowhere contends that the amount of damages for which judgment, after the remittitur, was finally rendered, is excessive—nowhere, in this record, argues that if appellee has a right to recover at all, that she has recovered too much. Wholly independent of the testimony concerning the tumor, she is very badly injured and disabled for life.

Appellant complains of the first instruction given on behalf of appellee. It is as follows:

"No. 1. If the jury find from the evidence in this case that the defendant received the plaintiff as a passenger upon its car at Olney, Illinois, on defendant's line of railway, to be carried as a passenger to the relay station or depot in East St. Louis on defendant's line of railway, then it was the duty of the defendant, by its servants in charge of the engine and train of cars on which plaintiff was such passenger, to have carried the plaintiff to her point of destination, and to have there stopped the train a sufficient length of time to have allowed the plaintiff to leave said car safely while using ordinary care and diligence to do so. And if the jury in this case find, from the evidence, that defendant's servants in charge of the train on which plaintiff was such passenger did stop said train at the relay station to enable passengers to alight therefrom, and that while said train was so stopped to enable passengers to alight from said train, the plaintiff left her seat and was proceeding to alight from said train, and if the jury further find from the evidence that while the plaintiff was on the platform of defendant's car, seeking to get off said car, and while she was using ordinary care and diligence in that regard, defendant's servants in charge of its cars caused said car on which the plaintiff was such passenger to be started forward with a sudden jerk before the plaintiff could alight from said car while using ordinary care, and that thereby the plaintiff was caused to be thrown or fall from said car and sustained the injuries on account of which she sues, then the defendant is liable, and the verdict should be that the defendant is guilty." Given.

It is urged against this instruction that it assumes that if the car started with a sudden jerk such fact was negligence; that such jerks may result from the usual movement of trains; and that whether or not it is negligence in a particular case is a question of fact.

The substance of the negligence charged in this case is, the failure of appellant to stop its train at the station of appellee's destination a sufficient length of time to allow her to safely alight, and after having stopped it, and while

appellee was in the act of alighting, before she had time to do so, starting forward the train with such sudden jerk as threw her off. The principal element of negligence in this charge is, the starting of the train while appellee was in the act of alighting, without having given her a reasonable time in which safely to alight. The manner of starting is important only to the extent of its agency in causing her to be thrown or to fall from the car. This case does not depend upon whether or not the jerk, as a wholly independent circumstance, was of itself an act of negligence. It was a danger-producing incident of the principal act of negligence. Appellee testifies: " The train was standing still until I got on the platform of the car." " The car started suddenly; the effect was to throw me off." " There was sufficient shock to jar my left shoulder when I struck the end of the car." Mr. Morris testified in substance that the car started up with a kind of easy jerk.

The testimony clearly tends to prove that while appellee was in the act of alighting, and before she had time safely to do so, the car suddenly started with such jerk and force as to throw or cause her to fall from the car. It is further urged against this instruction that it allows a recovery for a cause not alleged in the declaration. To our minds this objection is not well taken. We are of opinion the instruction fairly submits the case to the jury upon the charges made in the declaration.

Complaint is also made of appellee's second instruction. We are of opinion that it is fully supported by the evidence and the just inference that may properly be drawn therefrom—that it is a substantially correct statement of the law, arising out of such facts as the evidence tends to prove; and besides, it applies only to the amount of damages, and, as above said, it is not urged here that the amount of the judgment, as finally rendered, is excessive.

The judgment of the trial court is affirmed.